UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FRANK DOGALI

V.                                                    D.N.  3:24 cv ___

STOP & SHOP SUPERMARKET,
REGION 4                                        DECEMBER 4, 2024

## COMPLAINT

### I.    Parties

1.  The Plaintiff, Frank Dogali is a resident of Seymour, Connecticut and a member of a protected class being 58 years old (DOB: 12/10/1965) and having a physical disabilities (Weight, Glaucoma).

2.  The Defendant Stop & Shop, Region 4, whose business address is 5101 Fashion Drive, Nanuet, New York, 10954 ("Stop & Shop").

### II. Jurisdiction, Venue and Equitable Relief

3.  This action against Stop & Shop arises under Title VII of the Civil Rights Act of 1964 as amended ("Title VII").  It also arises under Connecticut General Statutes Sections 46a-60(a)(1).  This Honorable Court has jurisdiction over this action pursuant to Title VII.

1

4. The Plaintiff has exhausted the administrative remedies made available to him by filing his claims with the Connecticut Commission on Human Rights and Opportunities ("CCHRO") Case Number 2420415 and the Equal Employment Opportunities Commission ("EEOC") Case Number 16A-2024-01159 and then requesting a release of jurisdiction and having the request granted by way of a "Release of Jurisdiction" from the CCHRO dated November 6, 2024 (attached).

5. Venue is proper in this District because a substantial part of the events giving rise to Plaintiff's claim arose here and one or more of the breaches of which Plaintiff complains occurred here.

**III. Statement of Facts:**

6. The Plaintiff is a 58 year old, (DOB: 12/10/1965) male with the following disabilities; Glaucoma, Weight.

7. The Plaintiff was employed as a "Pharmacist" with the Defendant Stop & Shop.

8. The Plaintiff was diagnosed with Glaucoma in 2011. He is over weight.

9. The Plaintiff began employment with the respondent Stop & Shop on June 12, 2012 as a Pharmacist.

10. On March 1, 2020 the Plaintiff began working as the Pharmacy Manager at the respondent's Westport, CT store.

11. Within the first week of being in Westport, the Plaintiff went to speak with the store manager (Patrick Timpanelli) in regard to technicians using the red card and locating the managers. The store manager yelled and cursed at me stating "I am the store manager, they can come and find me." He repeatedly yelled "get the Fuck out of my office".

12. Manager Patrick Timpanelli repeatedly told the Plaintiff "Why are your eyes red?  What are you on?" and he would then laugh and chuckle in a demeaning manner.

13. In 2020, a veterinarian called in a prescription for a new pet to the pharmacy.  The prescription was called in with the old pet owner's information.  When the new pet owner came in to pick up the prescription, no prescription could be located.  The customer complained about the prescription not being ready and became irate and was yelling.  The customer asked "Why are your eyes red?"  The Plaintiff told him my eyes are red because it is a side effect of the medications I take for my Glaucoma.  Ultimately that customer wrote a letter to the DEA stating that the Plaintiff did medical marijuana.   The DEA did an investigation and concluded the customer was not honest and his accusations were invalid and threw out the case.  However, Stop & Shop still did not support the Plaintiff.  The Plaintiff was reprimanded by Human Resources.  HR said the Plaintiff could have handled the incident differently.  There was an HR zoom call about this incident.  The HR person asked the Plaintiff why he told the patient he had Glaucoma.

14. There were multiple times that the Plaintiff informed management of safety issues when the pharmacist is alone without help. Manager Patrick Timpanelli also made comments to the Plaintiff about his weight. He would say "look at you" referring to the Plaintiff's weight as well as his eyes. Timpanelli was accusatory and demeaning.

15. Just prior to May, 2022 a patient was upset that her prescription was not ready (it was an improper prescription - an ear drop for her husbands eye). The patient told the Plaintiff to just fill what the Doctor had prescribed. The Plaintiff had already reached out to the Doctor for clarification and then called a second time (with the patient's wife there). The Plaintiff was told the Doctor would get back to him because he was with a patient. The customer was standing at the front of the counter. The Plaintiff politely asked her to stand to the side due to HIPPA laws. The customer waited for a short period of time. The customer then went to the front and complained to the Assistant Manager, Brad May. She told Brad her prescription was not ready. She told Brad that the Plaintiff told her to leave the store which was not true. Brad did not verify her claims with me (which is normal protocol) and also did not know about the error in the prescription. Brad then called HR about the incident without factual knowledge of the incident.

16. After Brad May called Human Resources and complained falsely about how the Plaintiff had treated the customer, the Plaintiff was demoted from Pharmacy Manager to Staff Pharmacist.

4

The Plaintiff was relocated to a Danbury store. His salary went from $153,920 to approximately $138,000.

17. In mid -August, 2022 the Plaintiff was relocated to the respondent's Newtown location as Staff Pharmacist. On August 29, 2022 the Plaintiff was in an automobile accident after leaving work and out of work until December 11, 2022. While he was out of work, he was made to feel as though his job was threatened and that he was going to lose my position as scheduler.

18. The Plaintiff returned to work January 2, 2023 at the respondent's Newtown location. He was then relocated to the respondent's New Milford, CT location.

19. On March 1, 2023, the Plaintiff was instructed by his District Manager to not go to my store in New Milford, CT because he was being investigated. The Plaintiff was never told why he was being investigated. After two weeks, HR brought the Plaintiff into the office and the HR person asked him "how do you pick up a phone line that somebody else is on". In the Plaintiff's response he made reference to a recent incident in which a technician was giving a patient misinformation on the phone. The Plaintiff asked the technician twice to put the patient on hold and he would help them. After the technician did not put the patient on hold, The Plaintiff picked up the line and said "Hi, this is the pharmacist, how can I help you?" The patient said; "I thought I was speaking to the pharmacist." The Plaintiff told the patient

5

"A Technician was helping you. This is Frank, I am the pharmacist, how can I help you?" The misinformation was corrected. The patient was satisfied and thanked the Plaintiff.

20. The Human Resources person also asked the Plaintiff if he swore in the pharmacy. The Plaintiff told him he did not swear in the pharmacy. He continued to question the Plaintiff. He was presenting scenarios of instances where the Plaintiff might swear. The Plaintiff kept answering that I did not swear in the pharmacy. The Plaintiff continued to give him a recent example of an instance when a customer was swearing in front of a technician and a patient in the pharmacy and I nicely asked the customer not to swear. Vivien (the technician thanked the Plaintiff for creating a safe environment by asking the customer not to swear). The HR person questioned the Plaintiff's professionalism. The Plaintiff told him that "I overlap with pharmacists in New Fairfield Jenny and Diane who can attest to my professionalism with customers in person and over the phone. Also, as to how I work together with staff." The next thing that was talked about was a patient that had a personal grudge or vendetta against the Plaintiff who had been making false accusations about the Plaintiff not filling prescriptions at least five to seven times in December and January when the Plaintiff was not at work. The pharmacy manager defended the Plaintiff telling the patient that it was not Frank because he was not at work. And the front store manager is aware of the false accusations. The Plaintiff explained an incident where she falsified her

6

husband's signature and the Plaintiff nicely informed the patient that her husband had to sign his signature. The Plaintiff also explained another incident with the same patient where she had asked on the phone for me to read a list of her adult son's medications. The Plaintiff asked her if she had power of attorney and she said no. Her son was not there to give the Plaintiff permission for the Plaintiff to speak to her about his medications. She continued to ask the Plaintiff to break HIPPA laws and the Plaintiff would not. The investigation proceeded for over a month in which the Plaintiff was not allowed in his home store and was never informed as to why he was being investigated. The manner in which the investigation was handled was mental cruelty.

21. On April 1, 2024, the Plaintiff was working in the Danbury store. His DPM, John Zoldak, came into the pharmacy with a pharmacist to replace the Plaintiff and he asked the Plaintiff to come to the office for a few minutes. When the Plaintiff went into the office, it was Jim Denyan, HR, Marc Cooney, DPM, and John Zoldak, DPM. At that time, the Plaintiff was informed that I was being terminated. The termination letter that was handed to the Plaintiff stated "unprofessional conduct". It did not provide any substance as to the reason for his termination. The Plaintiff brought up the questions he was asked from HR during the one on one weeks before. The Plaintiff stated he was never told what the investigation was about. Jim Denyan HR stated "the decision was already made and the meeting should come to an

7

end." The Plaintiff stated to Jim, "I believe a pharmacy DPM pharmacist should have been present in our one on one meeting a couple of weeks prior, particularly when we discussed me doing my job as a pharmacist and not breaking the law.

22. After all of the allegations and investigations of supposed wrong doing, the Plaintiff was never offered any training or re-training or performance improvement plans or follow up. The Plaintiff was just relocated to another store.

23. The Plaintiff was discriminated against and terminated by Stop & Shop based on his age (58) and physical disabilities (Glaucoma and Weight).

**IV. Count One: Violation of Title VII of the Civil Rights Act of 1964 as Amended:** :

24. The Defendants violated Title VII of the Civil Rights Act of 1964 as Amended by discriminating against the Plaintiff on account of the Plaintiff's age (DOB: 12/10/1965) and disabilities; Weight and Glaucoma.

## V.   Count Two: Violation of Connecticut General Statutes Section 46a-60

25.  The Defendants violated the provisions of Connecticut General Statutes Section 46a-60 by discriminating against the Plaintiff on account of the Plaintiff's age (DOB: 12/10/1965) and disabilities; Weight, Glaucoma.

## VI. Damages/Prayer for Relief:

26. As a result of Defendants unequal treatment and discriminatory treatment of the Plaintiff and defamation of the Plaintiff, the Plaintiff has suffered financial and emotionally.  His career path has been forever altered negatively and he has lost opportunities for employment.

27.  As to all Counts, the Plaintiff prays for the following:

    a.  Compensatory Damages;

    b.  Economic Damages;

    c.  Equitable Damages;

    d.  Attorney's Fees and Costs;

    e.  Punitive Damages;

    g.  All Other Damages Available.

9

THE PLAINTIFF:

By:___/s/ Daniel H. Kryzanski ct 15620
        Daniel H. Kryzanski, Esq.
        Law Offices of Daniel H. Kryzanski
        30 Ferry Blvd. #2
        Stratford, CT 06615
        Phone: (203) 380-1384
        Fax: (203) 380-1598
        Bar: CT 15620

## STATE OF CONNECTICUT
## COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

Frank Dogali
**COMPLAINANT**

vs.

CHRO No. 2420415
EEOC No. 16A-2024-01159

Stop & Shop Supermarket Region 4
**RESPONDENT**

## RELEASE OF JURISDICTION

The Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint. The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred, in which the Respondent transacts business or in which the Complainant resides. If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.

A copy of any civil action brought pursuant to this release must be served on the Commission at ROJ@ct.gov or at 450 Columbus Blvd., Suite 2, Hartford, CT 06103 at the same time all other parties are served. Electronic service is preferred. **THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT. § 46a-103.**

The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.

**DATE:** November 6, 2024

Tanya A. Hughes, Executive Director

**Service:**
**Complainant:** Frank Dogali (Via Email – franied2070@yahoo.com)
**Complainant's Attorney:** Daniel H. Kryzanski, Esq. (Via Email – danielkryzanski@gmail.com)
**Respondent's Attorney:** Channez M. Rogers, Esq. (Via Email – charogers@littler.com)